UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>RYAN DAVIDSON<br><br>Defendant. | Criminal Action No. 4:23-cr-40011-MRG |

## MEMORANDUM AND ORDER

**GUZMAN, J.**

Defendant Ryan Davidson ("Defendant") is charged in a two-count superseding indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The superseding indictment also includes forfeiture allegations pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), and 26 U.S.C. § 5872. Before the Court is Defendant's motion to dismiss [ECF No. 37], in which he argues that § 922(g)(1) is unconstitutional on its face in light of the Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). For the reasons that follow, Defendant's motion is **DENIED**.

I.   **Background**

The charges of the superseding indictment arise out of a traffic stop of Defendant's vehicle on May 9, 2023. [ECF No. 37 at 1; ECF No. 41 at 4]. Following the traffic stop, the Worcester Police arranged to tow the vehicle. [ECF No. 37 at 1-2; ECF No. 41 at 4]. Officers

conducted an inventory search on the vehicle prior to towing it and uncovered a loaded Taurus, 9-millimiter pistol, twenty-six rounds of 9-millimeter ammunition, and a silencer in the front glove box. [ECF No. 20 at 1; ECF No. 37 at 2; ECF No. 41 at 4]. Defendant was arrested and arraigned on May 10, 2023. [ECF No. 37 at 2].

The superseding indictment states that Defendant possessed this firearm "knowing that he was previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year." [ECF No. 20 at 1].

On August 31, 2023, Defendant was charged by indictment on Count 1 (Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1)) only. [ECF No. 1]. On November 2, 2023, he was charged by superseding indictment, which added Count 2 (Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d)). [ECF No. 20]. Defendant seeks to dismiss Count 1 of the superseding indictment in the pending motion to dismiss.

**II.     Legal Standard**

"A defendant may seek dismissal of an indictment on grounds that the statute authorizing the charge is unconstitutional." United States v. Fulcar, 701 F. Supp. 3d 49, 51 (D. Mass. 2023); see United States v. Carter, 752 F.3d 8, 12 (1st Cir. 2014). To consider a facial challenge, as Defendant puts forth here, Defendant must show "that the statute lacks any 'plainly legitimate sweep.'" Hightower v. City of Boston, 693 F.3d 61, 77-78 (1st Cir. 2012) (quoting United States v. Stevens, 559 U.S. 460, 472 (2010) (citation omitted)).

**III.    Analysis**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the United

States Supreme Court recognized that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. 570, 592 (2008). However, the Supreme Court cautioned that "the right secured by the Second Amendment is not unlimited" such that it implies a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. Notably, the Supreme Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" Id.

Two years later, in McDonald v. City of Chicago, the Supreme Court considered whether its holding in Heller applied to state laws. 561 U.S. 742, 767 (2010). The Supreme Court found in the affirmative, reasoning that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller." Id. at 791. As it did in Heller, the Supreme Court also reiterated the Second Amendment's right to bear arms is not unlimited. Id. at 786 ("We made it clear in Heller that our holding did not case doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons …. We repeat those assurances here." (quoting Heller, 544 U.S. at 626)).

Following the decisions in Heller and McDonald, courts developed a means-ends framework for evaluating Second Amendment challenges, resulting in the application of intermediate scrutiny. See Worman v. Healey, 922 F.3d 26, 38 (1st Cir. 2019). In the 2022 landmark Bruen opinion, the Supreme Court called into question this understanding by changing the lens through which courts evaluate firearms restrictions. Bruen, 597 U.S. at 19. There, the Supreme Court held that neither Heller nor McDonald support the application of a "means-end scrutiny in the Second Amendment context." Id. Instead, courts are to assess whether the Government has affirmatively proven that its "firearms regulation is part of the historical

traditions that delimits the outer bounds of the right to keep and bear arms." Id. This approach first requires courts to determine whether the "Second Amendment's plain text covers an individual's conduct," in which case "the Constitution presumptively protects that conduct." Id. at 17. At that point, to justify the regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id.

Here, Defendant argues that § 922(g)(1) is facially unconstitutional in light of Bruen. As an initial matter, Bruen did not address the constitutionality of § 922(g)(1). Rather, the question before the Supreme Court was whether the denial of petitioners' request for wholly unrestricted concealed-carry licenses for self-defense violated their Second Amendment rights. Id. at 16-17. As we have determined in the past, "[p]rior to Bruen, but after Heller and McDonald, the First Circuit rejected a constitutional challenge to § 922(g)(1)." United States v. Johnson, No. 23-cr-10043-ADB, 2024 WL 199885, at * 2 (D. Mass. Jan. 18, 2024) (citing United States v. Torres-Rosario, 658 F.3d 110, 112-13 (1st Cir. 2011), cert denied, 565 U.S. 1271 (2012)). Indeed, in United States v. Torres-Rosario, the First Circuit explained that the Supreme Court's opinions in Heller and McDonald "did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons." Torres-Rosario, 658 F.3d at 112-13 (quoting McDonald, 561 U.S. at 786).

Since Bruen, the First Circuit reaffirmed in United States v. Langston that "[n]o case from the Supreme Court or our court holds that § 922(g)(1) is unconstitutional on any of its applications[.]" 110 F.4th 408, 419 (1st Cir. 2024). In reaching this conclusion, the First Circuit reiterated the limitations that the Supreme Court expressed in Heller and McDonald. Id. at 419-20 ("The Court noted in both Heller and McDonald that 'nothing in [its decisions] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'")

(quoting Heller, 554 U.S. at 626-27) (citing McDonald, 561 U.S. at 786)). The First Circuit also referenced United States v. Rahimi, 602 U.S. 680 (2024), where, following Bruen, the Supreme Court found that the temporary disarming of an individual pursuant to § 922(g)(8) is consistent with the Second Amendment when the individual has been found by a court to pose a credible threat to the physical safety of another. Id. at 420. The First Circuit explained that "the Supreme Court's majority opinion in Rahimi, joined by eight justices, once again identified prohibitions on the possession of firearms by felons as 'presumptively lawful.'" Id. at 420. As such, "the Supreme Court has stated repeatedly over sixteen years, from Heller to Rahimi, that felon-in-possession laws are presumptively lawful." Id.

Because no binding precedent has put into question the constitutionality of § 922(g)(1), the Court declines to depart from the First Circuit's position on this question. See, e.g., Fulcar, 701 F. Supp. 3d at 54 (collecting First Circuit cases concluding that First Circuit's rejection of constitutional challenge to § 922(g)(1) remains controlling precedent); United States v. Florentino, 701 F. Supp. 3d 42, 44 (D. Mass. 2023) (finding § 922(g)(1) constitutional even after Bruen); United States v. Belin, No. 21-cr-10040-RMZ, 2023 WL 2354900, at *1 (D. Mass. Mar. 2, 2023) ("Bruen did not disrupt the prior controlling caselaw …. Similarly, the First Circuit's rejection of a constitutional challenge to § 922(g)(1) remains controlling precedent."); United States v. Pringle, No. 22-10157-FDS, 2023 WL 7135176, at *2-3 (D. Mass. Oct. 30, 2023) ("This Court will follow suit, and likewise reject the facial challenge to § 922(g)(1)."); United States v. Ortiz, No. 22-10257-NMG, 2024 WL 3257186, at *2 (D. Mass. July 1, 2024) ("Courts have, however, uniformly rejected facial challenges to 18 U.S.C. § 922(g)(1). This Court will follow suit." (citations omitted)).

Nonetheless, even assuming that the First Circuit precedent is no longer binding, the Court is unconvinced that Defendant's facial challenge is meritorious after Bruen. First, the Second Amendment's text does not plainly cover Defendant's conduct. See Bruen, 597 U.S. at 17. Defendant argues that the Second Amendment's reference to "the people" necessarily includes individuals who have committed felonies. [ECF No. 37 at 5-7]. The Supreme Court in Bruen, however, repeatedly used the phrase "law-abiding citizens" to refer to those individuals who hold Second Amendment protections. See 597 U.S. at 9, 15, 26, 29-31, 33 n.8, 38 & n.9, 60, 70-71. Although the Supreme Court did not elaborate upon the meaning of "law-abiding citizens," we have previously concluded that the phrase "does not plainly refer to individuals convicted of felonies." Fulcar, 701 F. Supp. 3d at 56; see Johnson, 2024 WL 199885, at *2 ("Although the Supreme Court did not elaborate upon the implications of its repeated use of the qualifier 'law-abiding citizens' … it seems clear that the distinction was meant to differentiate convicted felons from 'law-abiding citizens.'"). Accordingly, the Court finds that the Second Amendment's plain text does not cover Defendant's conduct.

Assuming arguendo that the Second Amendment protects individuals who have committed felonies, the Court finds that the Government has met its burden to show that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24. At this step, the Government must only "identify a well-established and representative historical analogue, not a historical twin." Id. at 30 (emphasis in original). Here, the Government argues that § 922(g)(1) is consistent with the nation's "longstanding tradition of disarming unvirtuous or dangerous citizens." [ECF No. 41 at 12]. Among other things, the Government points out to (1) "a 'highly influential' 'precursor' to the Second Amendment," [ECF No. 41 at 13 (quoting United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2020)

(referencing the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents)], which noted that "the people have a right to bear arms for the defence of themselves and their own state … and no law shall be passed for disarming the people or any of them, unless for crimes committed or real danger of public injury from individuals," [Id. at 13-14 (quoting Bernard Schwartz, The Bill of Rights: A Documentary History 662, 665 (1971) (emphasis added))]; (2) historical scholarship agreeing that "the prohibition of possession of firearms by those deemed dangerous is supported by history," [Id. at 14 (citing Lawrence Rosenthal, The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control, 92 Wash. U.L. Rev. 1187, 1239 (2015); Carlton F.W. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1377 (2009))]; (3) historical laws disarming "people deemed untrustworthy members of society," [Id. at 15-16]; and (4) the "historical tradition of imposing restrictions on felons, and stripping felons of rights, well beyond mere disarmament," [Id. at 16-19].

Defendant, nonetheless, points to non-binding, out-of-circuit precedent to dispute that felon-in-possession statutes are far from "longstanding." [ECF No. 37 at 9 (citing Range v. Att'y Gen. U.S., 69 F.4th 96 (3rd Cir. 2023))]. Defendant notes, for instance, that "[t]he earliest federal prohibitions on firearm possession based on prior criminal convictions did not come into existence until 1938, nearly 150 years after the ratification of the Second Amendment, and the first version of § 922(g) was not passed until 1961, a full 170 years after ratification." [Id. (citing Range, 69 F.4th at 105)]. As such, Defendant posits that the Government bears the burden to prove that "a blanket prohibition excluding people with prior felony convictions" from the Second Amendment's right to bear and keep arms is consistent with the nation's historical

tradition of firearm regulation. [Id.]. Because the Government need not produce a historical twin of § 922(g)(1) to meet its burden under Bruen, the Court finds that the Government has sufficiently shown "historical precursors" to § 922(g)(1) that are "analogous enough to pass constitutional muster." Fulcar, 701 F. Supp. 3d at 57 (quoting Bruen 597 U.S. at 30); accord Johnson, 2024 WL 199885, at *4.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [ECF No. 37] Count I of the superseding indictment is **DENIED**.

**SO ORDERED.**

Dated: December 23, 2024

                                                 /s/ Margaret R. Guzman
                                                 Margaret R. Guzman
                                                 United States District Judge